UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CHRISTOPHER M. WOODSON, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 6:16-cv-0019-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| R. SALINAS, Warden, | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Respondent. | ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Inmate Christopher Woodson is confined at the United States Penitentiary-Big Sandy in Inez, Kentucky. Proceeding without an attorney, Woodson has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [R. 1.]

**I**

In Nashville, Tennessee during December 2009, Woodson and a cohort robbed several fast food restaurants at gunpoint before they were captured by police on January 16, 2010. At the time, Woodson was subject to a suspended 10-year sentence from a 2006 conviction for drug trafficking imposed by the Criminal Court for Davidson County, Tennessee, in Case No. 2006-B-1618. The state indicted the two men for the robberies, but those charges were eventually dropped. On April 14, 2010, Tennessee did, however, revoke Woodson's probation on the suspended sentence for violating the terms of his supervision, and ordered him to serve the original 10-year sentence, with credit given for prior periods in state custody. [R. 1-1 at 12.]

While he was serving that sentence, in March 2012 a federal grand jury indicted Woodson and his accomplice for essentially the same conduct, as these robberies also violated the Hobbs Act, 18 U.S.C. § 1951. [R. 1-1 at 12.] As part of a plea agreement, Woodson pled guilty to three counts of armed robbery in exchange for the dismissal of other charges, and in

September 2013 the federal court sentenced Woodson to 72 months imprisonment to be followed by three years of supervised release. Consistent with the parties' recommendations in the plea agreement, the trial court ordered his federal sentence to run concurrently with the pre-existing 10-year state sentence. The trial court, recognizing that it lacked the authority to order the Bureau of Prisons ("BOP") to give Woodson pretrial jail credit against his federal sentence, nonetheless recommended that it do so starting on June 11, 2012, the day he was borrowed from state custody on a writ of habeas corpus *ad prosequendum*. *United States v. Woodson*, No. 3: 12-CR-51-1 (M.D. Tenn. 2012).

In March 2014, approximately four years after his 10-year state sentence was imposed, Tennessee granted Woodson parole. He was then transferred from state custody to federal prison to serve the remainder of his federal sentence. Believing that the BOP was not crediting him with the full measure of the prior custody credits to which he was entitled, he filed inmate grievances seeking relief. Specifically, he argued that he was entitled to a "nunc pro tunc designation," as well as prior custody credits beginning on January 16, 2010, (the day he was arrested by state authorities) to June 11, 2012, (the day he was taken into federal custody pursuant to a writ) pursuant to *Willis v. United States*, 438 F. 2d 923, 925 (5th Cir. 1971). [R. 1-1 at 7-8, 10-11.]

The BOP transmitted Woodson's grievance to its Designation and Sentence Computation Center in Grand Prairie, Texas, to determine if he was eligible for additional credits, either under *Willis*, or under *Kayfez v. Gasele*, 993 F.2d 1288, 1290 (7th Cir. 1993). However, because the "Effective Full Term" of Woodson's state sentence – the date it would have expired if he had served all 10 years of it – was after, not before, the full term expiration date of his 6-year federal sentence, the BOP concluded that Woodson was not entitled to credits under *Willis* or *Kayfez*,

nor to a "retroactive designation" pursuant to BOP Program Statement 5160.05 (Jan. 16, 2003). [R. 1-1 at 8, 12-13.]

Having failed to convince the BOP to advance his release date, Woodson sought relief from the trial court in December 2015. Consistent with the government's response, in January 2016 the trial court held that he must seek relief by filing a petition for a writ of habeas corpus in the district of his confinement. Woodson filed his petition in this case shortly thereafter, again seeking credit against his federal sentence. Notably, Woodson's petition does not request credit from January 16, 2010, to June 11, 2012, (as he did in his grievances to the BOP), but from June 11, 2012, forward. [R. 1 at 6-8]

## II

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Woodson's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At this stage of the proceedings, the Court accepts the petitioner's factual allegations as true and construes all legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Calculation of a federal prisoner's sentence, including both its commencement date and any credits for custody before the sentence is imposed, is governed by federal statute:

> (a) A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

3

> (b) A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585. The BOP implements Section 3585 through Program Statement 5880.28 (Feb. 19, 1997). In this case, Woodson's federal sentence was ordered to run concurrently with the state sentence he was already serving. As a result, under Section 3585(a) his federal sentence commenced on the day it was imposed, and the BOP was correct to so conclude. [R. 1-1 at 9, 12]

Of course, the amount of time Woodson would serve under that 72-month sentence might be reduced if he is entitled to additional credit for time he spent in custody before his federal sentence was imposed. But Section 3585(b), which governs such prior custody credits, is clear that they are available only if that time "has not been credited against another sentence," here, his April 2010 state probation revocation sentence. Such "double counting" is not permitted. *United States v. Wilson*, 503 U.S. 329, 337 (1992); *Broadwater v. Sanders*, 59 F. App'x 112, 113-14 (6th Cir. 2003).

There are, however, a few judicially-crafted exceptions to the prohibition on double counting. But before discussing them, it should be noted that Woodson's request for a "nunc pro tunc" or "retroactive" designation is either mislabeled or clearly without merit. In his grievances and in his petition he uses those terms [R. 1 at 2-4; R. 1-1 at 7, 10, 14], but that phrase relates only to requests for relief sought pursuant to *Barden v. Keohane*, 921 F. 2d 476 (3d Cir. 1990). Under *Barden*, the BOP may exercise its discretionary placement authority under 18 U.S.C. §

3621(b) to effectively reduce the length of a federal sentence. The remedy fashioned in *Barden* can *only* apply where a state court orders that its sentence shall run concurrently with a previously-imposed federal sentence on the mistaken assumption that the federal sentence commenced upon imposition where that result is precluded by 18 U.S.C. § 3585(a). *Cf. Dunlap v. Ives*, No. 11-271-GFVT, 2012 WL 1711379, at *2-3 (E.D. Ky. May 15, 2012). Because Woodson's state probation revocation sentence was imposed before, not after, his federal sentence, the remedy afforded by *Barden* has no relevance or application here. The Court will therefore limit its discussion to the BOP's determination that Woodson was not entitled to additional credits under *Willis* or *Kayfez*.

In addition, if the Court takes at face value the Woodson's statement that he now seeks prior custody credits from June 11, 2012 forward [R. 1 at 6-8], that claim is both unexhausted and substantively without merit. Federal law requires a prisoner wishing to file a habeas corpus petition under 28 U.S.C. § 2241 to exhaust his or her administrative remedies before doing so. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 230-31 (6th Cir. 2006). Requiring exhaustion of remedies available within the agency whose actions are being challenged preserves the agency's administrative authority by providing the agency with "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). A prospective litigant must present their claim for relief in such a manner to "give the agency a fair and full opportunity to adjudicate their claims ..." *Id*. at 90.

Although Woodson filed inmate grievances regarding prior custody credit, he sought credit for an entirely different period of time than he seeks here, and these time periods are governed by distinct legal standards. The claim set forth in his petition is therefore unexhausted because he has not yet presented it to the BOP for consideration. *See Pruitt v. Holland*, No. 10-

CV-111-HRW, 2011 WL 13653, at *4-6 (E.D.Ky. Jan. 4, 2011) (collecting cases). It is also without merit because a state prisoner borrowed by federal marshals pursuant to a writ effects only a temporary change in physical custody, not legal custody, and that time is credited against the state sentence. *Cf. Easley v. Steep*, 5 F. App'x 541, 543 (7th Cir. 2001) ("When Easley was moved to the federal facility, he was still serving his state sentence and receiving state credit for that time. Thus, time spent in federal custody under a writ of habeas corpus *ad prosequendum* is not creditable toward the federal sentence.").

The claim Woodson did exhaust is his request for prior custody credits from January 16, 2010, to June 11, 2012. [R. 1-1 at 6-15.] The Court will liberally construe his petition to assert that claim here. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the BOP was right to reject it, and a brief history or *Willis* and *Kayfez* makes clear why.

In *Willis*, the Fifth Circuit held that a state prisoner who could demonstrate that he was denied release on bail because of a federal detainer was entitled to credit against his federal sentence because that time was "spent in custody in connection with the (federal) offense." *Willis*, 438 F.2d at 925 (citing *Davis v. Attorney General*, 425 F.2d 238 (5th Cir. 1970)). The Eighth Circuit reached the same result a decade later in *United States v. Haney*, 711 F. 2d 113, 114-15 (8th Cir. 1983). This aspect of *Willis* and *Haney* is no longer good law, as both cases were decided when prior custody credits were governed by 18 U.S.C. § 3568, which permitted "double counting" for non-federal time spent in custody "in connection with" the federal offense. Section 3568 was repealed on November 1, 1987, and was replaced by Section 3585(b), which by its terms categorically excludes such "double counting." *Willis* and *Haney* have therefore been superseded by statute. *See Elwell v. Fisher*, 716 F. 3d 477, 485 (8th Cir. 2013).

But in *Willis*, the Fifth Circuit also noted in passing that when a concurrent state sentence will end sooner than its federal counterpart, the fact that a state has already credited prior custody

6

time against its sentence essentially does the prisoner no good vis-a-vis his federal sentence. *Willis*, 438 F.2d at 925. While this outcome does not appear to have been Congress' intent, it is what the clear language of the statute plainly requires. Notwithstanding the express terms of Section 3585(b), the BOP has crafted an exception to the prohibition on "double counting" in Program Statement ("PS") 5880.28 (Sept. 20, 1999), which states that:

> If the federal and non-federal terms are concurrent and the Raw EFT [Effective Full Term] of the non-federal term is equal to or less than Raw EFT of the federal sentence [then] [p]rior custody credits shall be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal. These time credits are known as **Willis** time credits (*See* **Willis v. U.S.**, 449 F2d 923 (CA 5, 1971).

PS 5880.28 Ch. I § 3(c)(1)(b)(2)(C).[1] In other words, the BOP interprets *Willis* to allow the federal prisoner to get credit for time spent in jail before either sentence was imposed, even if the state has already credited it against his state sentence, if the full unadjusted length of the concurrent state term would end before the full unadjusted length of the federal sentence. The presentence custody must also occur after the federal offense was committed. *Id*. *See Cruz v. Wilson*, No. 6:09-CV-281-GFVT (E.D. Ky. April 1, 2011), *aff'd*, No. 11-5471 (6th Cir. April 26, 2012).

*Kayfez*, decided twenty years later and after the enactment of Section 3585(b), expands the protection afforded by *Willis* by granting federal presentence credits where, although the *full* term of the state sentence would complete after the full term of the concurrent federal sentence, credits for state presentence custody cause the state term to complete before the federal sentence. *Kayfez*, 993 F.2d at 1290. Thus,

---

1 The citation to *Willis* is incorrect, the decision is found in volume 438 of the Federal Reporter. Because it is not dispositive, the Court also assumes that the BOP's decision to graft exceptions into Section 3585(b) is permissible.

7

> If the non-federal and federal sentences are concurrent, the Raw EFT of the non-federal term is greater than the Raw EFT of the federal term, and if the nonfederal Raw EFT, after application of qualified non-federal presence time, is reduced to a date that is earlier than the federal Raw EFT, then a **Kayfez** (*See* **Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993)**) situation exists. In such a situation, the amount of qualified non-federal presence time, i.e., the amount of time in non-federal presence time [should be "custody"] after the date of the federal offense to the date that the non-federal or federal sentence commenced, whichever is earlier, shall be applied to the non-federal Raw EFT. The federal Raw EFT shall then be reduced to equal the reduced non-federal EFT. Any other existing prior custody time credits shall be deducted from the federal EFT after application of the Kayfez time credits.

PS 5880.28 Ch. I § 3(c)(1)(b)(2)(D); *see also* PS 5880.28 Ch. I § 3(c) at pg. 1-14A (defining "qualified non-federal presence time.").

The BOP, applying these two Program Statements, correctly concluded that neither applied to Woodson. Woodson's request for credits starting on January 16, 2010, to June 11, 2012, [R. 1-1 at 7-8, 10-11] should be considered in two parts: first from January 16, 2010, (the day he was arrested by state authorities) to April 14, 2010, (the day his state sentence was imposed), and second from April 15, 2010, (the day after his state sentence was imposed) to June 11, 2012, (the day he was taken into federal custody pursuant to a writ).

As to the second time period starting on April 15, 2010, *Willis* and *Kayfez* plainly do not apply because those decisions only afford relief for time spent in custody before, not after, the state sentence is imposed. PS 5880.28 Ch. I § 3(c) at pg. 1-14A. This time period is governed by Section 3585(b)'s ordinary prohibition against "double counting." *Wilson*, 503 U.S. at 337.

The first time period, starting from Woodson's arrest by Nashville police until his state sentence was imposed in April 2010 at least falls within the appropriate time range for "qualified non-federal presence time." Woodson committed his federal offenses in December 2009 and January 2010. Woodson's 10-year state sentence was imposed on April 14, 2010, and hence its raw full term expiration date would arrive in April 2020 for purposes of *Willis*. Because the state

8

court gave Woodson three months of credit for the time he spent in state custody after his January 16, 2010, arrest [R. 1-1 at 12], that "qualified non-federal presentence time" resulted in an adjusted full term expiration date in January 2020 for his state sentence for purposes of *Kayfez*.

However, both of those dates would arrive well after September 2019 - the raw full term expiration date of Woodson's 72 month federal sentence imposed in September 2013. As a result, Woodson's state sentence will always conclude *after* his federal sentence, even when state prior custody credits are considered. Thus he will necessarily obtain the full benefit of the state's award of prior custody credits against his state sentence, and the harm towards which *Willis* and *Kayfez* is directed will not transpire. The BOP therefore correctly concluded that Woodson was not entitled to relief under either provision.

Accordingly, **IT IS ORDERED** that:

1. Petitioner Christopher Woodson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [**R. 1**] is **DENIED**.

2. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

3. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

This the 22nd day of June, 2017.

Gregory F. Van Tatenhove
United States District Judge